IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CINDY NGUYEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| POLICE AND FIRE FEDERAL CREDIT, ET AL. | : | NO. 24-4121 |

**MEMORANDUM**

**Padova, J.** **December 9, 2024**

Plaintiff, acting pro se, has brought claims against the Police and Fire Federal Credit Union (the "Credit Union"); International Recovery Systems ("IRS"); Jared Pio, head of the Credit Union's repossession department; Vanassa Lopez, an employee of the Credit Union; Steven Theisen, an employee of IRS; and ten Doe defendants. (Compl. ¶ 8, page 8 & Ex. C.) The Complaint asserts that Defendants violated Pennsylvania law regarding the repossession of automobiles, as well as the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act by conspiring to unjustly repossess Plaintiff's car. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff has filed a Motion asking us to strike Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(f). For the reasons that follow, we grant the Motion to Dismiss and deny Plaintiff's Motion asking us to strike the Motion to Dismiss.

## I. THE COMPLAINT

The Complaint alleges the following facts. Plaintiff purchased a Lexus (the "car") from Thompson Lexus on March 29, 2018. (Id. ¶ 1.) She financed the car through the Credit Union with payments of $707.00 per month. (Id.) She never missed a payment. (Id. ¶ 2.)

At 9:30 a.m. on March 21, 2024, Plaintiff became aware that her car was missing from her driveway. (Id. ¶ 3.) She reviewed her security camera, which had recorded a heavily built Caucasian male examining her car. (Id. ¶ 4.) After a few minutes, the man, who was under orders from Mr. Theisen, left with Plaintiff's car. (Id.) Plaintiff notified the Philadelphia Police Department and subsequently filed a police report. (Id. ¶¶ 5-6.) The Police learned that Plaintiff's car had been repossessed by the Credit Union. (Id. ¶ 7.)

Plaintiff then called the Credit Union to find out what happened. (Id. ¶ 8.) She was told that her account had been locked and that she needed to talk to Mr. Pio. (Id.) At 10:30 that morning, Plaintiff spoke with Mr. Pio, who told her that her car had been repossessed because she sent a fraudulent check to the Credit Union. (Id. ¶¶ 9-10.) Plaintiff told Mr. Pio that she had never been late with a car payment and had never received an email, written notice, or phone call about the repossession of her car. (Id. ¶ 11.) Mr. Pio told Plaintiff that if she did not pay the Credit Union the amount she still owed for her car, $11,666.85, her car would be sold or auctioned. (Id. ¶¶ 11-12.)

Plaintiff has attached to the Complaint a copy of a letter that the Credit Union sent to her by regular and certified mail on March 21, 2024. (See Compl. Ex. C.) The letter notifies Plaintiff that the Credit Union has reclaimed her car because she breached promises she made in her agreement with the Credit Union. (Id.) The letter also states that Plaintiff's car was being stored at IRS Recovery at a cost of $40.00 per day. (Id.) The letter instructs Plaintiff that she is required to pay $11,666.85 to the Credit Union to redeem her car and that her car would be sold at private sale sometime after April 6, 2024 if she did not pay the full amount. (Id.) The letter was signed by Ms. Lopez of the Credit Union's Collection Department. (Id.)

Plaintiff spent two hours following her conversation with Mr. Pio borrowing the money to pay off her car loan. (Compl. ¶ 13.) Plaintiff believes that Mr. Pio wanted her to pay off the car loan immediately because he had a "hard time understanding her foreign accent." (Id. (emphasis omitted).) Plaintiff went to the Credit Union after 1 p.m. to pay off her car loan. (Id. ¶ 14.) Plaintiff asked the Credit Union employee who assisted her why her car had been repossessed since she had never made a late payment and had not been given any notice prior to the repossession. (Id. ¶ 16.) "The customer service person was stunned and shocked" and told Plaintiff that she had never seen "anything like it before since she ha[d] been working there." (Id.) After she paid off the car loan, Plaintiff went to IRS and paid IRS $800 to get her car. (Id. ¶ 17.) Plaintiff got her car back around 3:00 p.m. (Id. ¶ 19.)

Plaintiff noticed "crazy noises" coming from the front of her car when she drove it home from IRS. (Id. ¶ 20.) After Plaintiff got home, a friend noticed that the bottom of Plaintiff's car had been damaged. (Id.) There was several thousand dollars in damage to Plaintiff's car, which was undamaged prior to the repossession. (Id.) Plaintiff has been traumatized by the repossession of her car and wakes up multiple times every night to check on her car. (Id.) The trauma also prevents her from working. (Id.)

In addition to these factual allegations, which are contained in separately numbered paragraphs, the Complaint also contains several pages labeled argument. We have considered the allegations of fact contained in those pages. This portion of the Complaint alleges that Plaintiff owes nearly $12,000.00 to friends and family members who loaned her money to pay the Credit Union. (Compl. at 7.) In addition, Plaintiff had to miss work because of this experience. (Id.) This ordeal has also caused Plaintiff to suffer extreme stress and health issues. (Id.)

The Complaint does not specifically set out any causes of action. However, it appears that Plaintiff seeks to assert claims pursuant to Pennsylvania's Motor Vehicle Sales Finance Act ("MVSFA"), which governs repossession of motor vehicles that are subject to installment sale contracts, and is referred to in the Complaint as 69 Pa. § 623.[1] See 12 Pa. Cons. Stat. § 6251, et seq. It also appears that Plaintiff seeks to assert a claim pursuant to the RICO Act.

Plaintiff seeks $10,000,000.00 in pain and suffering from the Credit Union for civil rights violations[2] and depriving her of her property. (Compl. at 9-10.) She seeks $500,000 in pain and suffering from IRS for discrimination and stealing her property from her residence. (Id. at 10.) Plaintiff seeks an additional $150,000.00 from the Credit Union for the time she spent obtaining the money to pay off the car loan, time lost from work, and the interest she owes to friends and

---

[1] Pages seven and eight of the Complaint state that Defendants violated "69 Pa. § 623." We note that there is no Pennsylvania statute denominated as 69 Pa. § 623. We assume that Plaintiff seeks to assert a claim pursuant to 69 Pa. Stat. § 623, an earlier version of the MVSFA. However, that statute was repealed in 2013, effective December 1, 2014, and replaced by 12 Pa. Cons. Stat. §§ 6203, 6251-57, 6262. See 69 Pa. Stat. § 623. The following sections of Pennsylvania's current statutes related to motor vehicle repossession may be relevant to Plaintiff's claims in this action: (1) 12 Pa. Cons. Stat. § 6251, which describes the situations in which "[a]n installment seller or a holder, who has lawfully acquired a motor vehicle installment sale contract, may retake possession of the motor vehicle[;]" (2) 12 Pa. Cons. Stat. § 6252, which describes who may repossess an automobile pursuant to § 6251; and (3) 12 Pa. Cons. Stat. § 6254, which describes the notice that must be given when a vehicle is repossessed.

[2] In addition to these references to civil rights violations in Plaintiff's request for damages, the Complaint includes a few statements that appear to accuse the Credit Union of discriminating against Plaintiff on the basis of her national origin, sex, and race. Specifically, the Complaint alleges that "Mr. Pio wanted the note immediately paid off since [Plaintiff's] name and accent made it obvious she was Vietnamese due to his constant comments on having a 'hard time understanding her foreign accent'" and that the Credit Union "has shown a great deal of financial discrimination and prejudicial treatment of the Plaintiff and likely of categories of their customers, especially on the grounds of their citizenship, sex and race." (Compl. ¶ 13 (emphasis omitted) & page 9.) The Complaint does not, however, identify any state or federal law pursuant to which Plaintiff seeks to assert a discrimination claim against the Credit Union. Moreover, Plaintiff did not mention such a claim in the document she filed in response to the Motion to Dismiss. Under these circumstances, we conclude that Plaintiff did not intend to assert a discrimination claim in the Complaint.

family for the money she borrowed to pay off the car loan. (Id.) Plaintiff also seeks $11,666.75 from the Credit Union to reimburse her for the money she was required to pay it for the return of her car. (Id.) Plaintiff also seeks $75,000.00 from IRS for the $800.00 it charged her to tow and store her car, the time she was unable to use her car, and the time she spent borrowing money to reclaim her car. (Id.) Plaintiff seeks $125,000.00 from Mr. Pio for instigating the illegal repossession of her car and conspiring to steal her car for the purpose of selling it to make an illegal profit. (Id. at 10-11.) Plaintiff seeks $35,000.00 from Mr. Thiessen for conspiring with Mr. Pio to repossess her car in order to make an illegally obtained profit. (Id. at 11.) Plaintiff seeks $25,00000 from Ms. Lopez for permitting her name to be used on the letter sent to Plaintiff by the Credit Union. (Id.)

## II. MOTION TO STRIKE

In addition to responding to the arguments made by Defendants in their Motion to Dismiss, Plaintiff has asked us to strike the Motion pursuant to Rule 12(f). Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike 'are disfavored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" Angelis v. Philadelphia Hous. Auth., Civ. A. No. 23-460, 2024 WL 643142, at *3 (E.D. Pa. Feb. 15, 2024) (quoting Jones v. United States, Civ. A. No. 10-3502, 2012 WL 2340096, at *2 (D.N.J. June 18, 2012)). "A motion to strike [a defense] should not be granted unless the court is 'convinced that there are no questions of fact and that any questions of law are clear and not in dispute, and that under no set of circumstances can[] the defense succeed.'" Venable v. Macy's, Civ. A. No. 92-0477, 1992 WL 245843, at *1 (E.D. Pa. Sept. 21, 1992) (quoting Soanes v.

Baltimore & Ohio R.R. Co., 89 F.R.D. 430, 431 n.1 (E.D.N.Y. 1981)) (citations omitted); see also Fed. Deposit Ins. Corp. v. Musser, Civ. A. No. 12-7231, 2017 WL 878208, at *3 (E.D. Pa. Mar. 6, 2017) (stating that "the court 'should not grant a motion to strike a defense unless the insufficiency of the defense is "clearly apparent"'" (quoting Cipollone v. Liggett Grp., 789 F.2d 181, 188 (3d Cir. 1986))). "District Courts have 'considerable discretion' in deciding a motion to strike under Rule 12(f)." Angelis, 2024 WL 643142, at *3 (quoting Jones, 2012 WL 2340096, at *2).

Plaintiff has not pointed to any material in the Motion to Dismiss that she contends is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Moreover, while she argues that the Complaint should not be dismissed, she does not specifically argue that the Motion to Dismiss is so legally insufficient that it should be stricken. We have carefully considered the arguments made by Defendants in the Motion to Dismiss and, as we discuss below, grant the Motion. Therefore, we conclude that Plaintiff has not shown that there are no circumstances under which Defendants' defenses can succeed. Consequently, we deny Plaintiff's request that we strike the Motion to Dismiss.

## III. MOTION TO DISMISS

### A. Legal Standard

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "A complaint is properly dismissed for failing to state a claim 'if, accepting all well-pleaded allegations in the complaint as true and viewing them

in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility.'" Talley v. Pillai, 116 F.4th 200, 206 (3d Cir. 2024) (alteration in original) (quoting Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). "[W]e need not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. MarketPlace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Under this standard, a complaint need not plead all of the facts necessary to prove each element of the plaintiff's claims; "it need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (alteration in original) (quoting Fowler, 578 F.3d at 213). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative

level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

Plaintiff has brought this action pro se. "We construe . . . pro se filings liberally." Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (citing Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013)). Consequently, we are flexible in construing claims brought by pro se litigants and "'apply the relevant legal principle even when the complaint has failed to name it.'" Id. (quoting Mala, 704 F.3d at 244). "Yet 'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" Id. (quoting Mala, 704 F.3d at 245). Moreover, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" Id. (quoting Mala, 704 F.3d at 245).

B. Discussion

1. The MVSFA claim

As we discussed in footnote 1, supra, the Complaint appears to attempt to assert a claim pursuant to the notice provisions of an earlier version of the MVSFA, specifically 63 Pa. Stat. § 623, which, before it was repealed, "specifie[d] what constitutes adequate repossession notice." Nawrocki v. Faulkner Ciocca Ford, Civ. A. No. 07-1827, 2007 WL 3146671, at *6 (E.D. Pa. Oct. 29, 2007). As we mentioned in footnote 1, this statute has been repealed and replaced. The current version of the notice provision of the MVSFA provides that written notice shall be provided to a buyer when a motor vehicle is repossessed as follows:

> (a) General rule.--If repossession of a motor vehicle subject to an installment sale contract is effected other than by legal process, the holder shall immediately furnish the buyer with a written notice of repossession.
>
> (b) Delivery.--The notice of repossession shall be delivered in person or sent by registered or certified mail to the last known address of the buyer.
>
> (c) Contents.--The notice of repossession shall contain the following:

> (1) The buyer's right to reinstate the contract, if the holder extends the privilege of reinstatement and redemption of the motor vehicle.
>
> (2) An itemized statement of the total amount required to redeem the motor vehicle by reinstatement or payment of the contract in full.
>
> (3) Notice to the buyer of the holder's intent to resell the motor vehicle at the expiration of 15 days from the date of mailing the notice.
>
> (4) The place where the motor vehicle is stored.
>
> (5) The name and address of the person to whom the buyer shall make payment or on whom the buyer may serve notice.
>
> (6) A statement that any personal property left in the repossessed vehicle will be held for 30 days from the date of the mailing of the notice.
>
> (7) The name and address of the person that the buyer may contact to receive a full statement of account as provided by section 6230 (relating to statement of account to buyer).

12 Pa. Cons. Stat. § 6254.

Defendants ask us to dismiss Plaintiff's state law claim because Pennsylvania has not created a private right of action for violation of the repossession notice provisions of the MVSFA. Defendants rely on Chijioke-Uche v. Equifax Info. Servs., Civ. A. No. 19-4006, 2021 WL 2005499 (E.D. Pa. May 20, 2021), which determined that "the repossession provisions of the MVSFA do not contain a private right of action." Id. at *8 Chijioke-Uche relied on Nawrocki v. Faulkner Ciocca Ford, 2007 WL 3146671. The Nawrocki court considered whether the notice of repossession provision of the previous version of the MVSFA created a private right of action. Chijioke-Uche, 2021 WL 2005499, at *8 (citing Nawrocki, 2007 WL 3146671, at *6). "The Nawrocki court concluded that '[a]lthough certain provisions of the MVSFA may create private rights of action,' the provision governing notice of vehicle repossession did not." Id. (quoting Nawrocki, 2007 WL 31466771 at *4). We have found no authority that concludes

that there is a private right of action for violations of the notice provision of either the previous or the current version of the MVSFA.[3] We conclude, accordingly, that Plaintiff cannot assert a claim for violation of the notice provision of the MVSFA and we grant the Motion to Dismiss as to this claim.

C. The RICO Act Claim

The RICO Act makes it "unlawful for any person who has received any income derived . . . from a pattern of racketeering activity . . . to use or invest . . . any part of such income . . . in acquisition of any interest in . . . any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(a). The RICO Act also makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). The RICO Act further states that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). It is also "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

[3] We note that the court in Nelson v. Bank of Am., Nat'l Ass'n, Civ. A. No. 23-0255, 2023 WL 4844369 (E.D. Pa. July 3, 2023), declined to dismiss a claim brought pursuant to Pennsylvania's Uniform Commercial Code (the "U.C.C.") based on a lender's violation of the notice provision of the MVFSA by failing to provide adequate notice of repossession of financed motor vehicles and the sale of those vehicles to satisfy the plaintiff's debts. Id. at *1 n.1. The Nelson court determined that "allegations that the notices sent by [the defendant] failed to comply with the [notice provision of] the MVSFA are sufficient to state a claim under the U.C.C.'s commercially reasonable provision." Id. (citing 13 Pa. Cons. Stat. § 9610(b)). However, Nelson provides no support to Plaintiff because the Complaint in this case does not mention the commercial reasonableness provision of the U.C.C.

section." 18 U.S.C. § 1962(d). Congress has created a private right of action for violations of the RICO Act. See 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . .").

Defendant argues that the allegations of the Complaint do not state a plausible civil RICO claim. In order to allege a facially plausible RICO Act claim, a complaint must allege the following four elements:

> (1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts.

DiGiglio v. U.S. Xpress, Inc., 293 F. Supp. 3d 522, 527 (E.D. Pa. 2018), aff'd sub nom. DiGiglio v. U.S. Xpress Enterprises, Inc., No. 18-1347, 2018 WL 11449580 (3d Cir. Apr. 24, 2018) (quotation and citation omitted). "A RICO plaintiff must cite predicate acts which are specifically enumerated in 18 U.S.C. § 1961, and acts such as wire fraud and mail fraud, must be pleaded with particularity as required by Federal Rule of Civil Procedure 9(b)." Id. (citation omitted). "[C]onclusory allegations that Defendants 'did cooperate jointly and severally in the commission of 2 or more of the RICO predicate acts,' are not sufficient to state a claim under RICO." Kornea v. J.S.D Mgmt., Inc., 366 F. Supp. 3d 660, 670 (E.D. Pa. 2019) (quotation omitted).

Defendants argue that we should dismiss Plaintiff's RICO claim because the Complaint does not allege that Defendants participated in a pattern of racketeering activity that included at least two racketeering acts. The RICO Act defines "racketeering activity" as: "(A) any act or

threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . which is chargeable under State law and punishable by imprisonment for more than one year" and "(B) any act which is indictable under any of the following provisions of title 18." 18 U.S.C. § 1961(1). The Complaint alleges that "Defendants conspired to steal and did steal Plaintiff's car from her residence." (Compl. at 6.) The Complaint further alleges that "Defendants discussed, conspired, and agreed on this theft program before they decided to go and steal the Plaintiff's vehicle, knowing all along they were in violation of Pennsylvania Law . . . and Federal Fraud laws." (Id. at 7-8.) The Complaint also alleges that Defendants Pio and the Credit Union "coordinated with" Defendants Theisen and IRS "to commit conspiracy, fraud as well as committing a RICO Act when agreeing to work together to steal and profit from their illegal activities." (Id. at 8.) Finally, the Complaint alleges that the Credit Union, represented by Mr. Pio and Ms. Lopez, and IRS, represented by Mr. Theisen, "committed theft, fraud, and criminally stole Plaintiff's vehicle with the intention of financial and or personal gain." (Id. at 9.)

Three of the acts listed under § 1961(1)(B) include the word "theft." Id. Those are 18 U.S.C. § 659, which prohibits thefts from "[i]nterstate or foreign shipments by carrier" and 18 U.S.C. §§ 1831-32, which prohibit theft of trade secrets. See 18 U.S.C. §§ 659, 1831-32. The Complaint alleges that Defendants conspired to steal and did steal Plaintiff's car from her driveway, it does not allege that Defendants engaged in theft from interstate or foreign shipments or the theft of trade secrets.

The Complaint also alleges that Defendants engaged in fraud when they worked together to steal Plaintiff's car. (See Compl. at 6-9.) Section 1961(1)(B) uses the word "fraud" in connection with nine indictable acts: (1) fraud in connection with identification documents in

violation of 18 U.S.C. § 1028; (2) fraud in connection with access devices in violation of 18 U.S.C. § 1029; (3) mail fraud in violation of 18 U.S.C. § 1341; (4) wire fraud in violation of 18 U.S.C. § 1343; (5) fraud of a financial institution in violation of 18 U.S.C. § 1344; (6) fraud in connection with recruiting or soliciting foreign labor in violation of 18 U.S.C. § 1351; (7) visa fraud in violation of 18 U.S.C. § 1546; (8) bankruptcy fraud under Title 11; and (9) "fraud in the sale of securities." 18 U.S.C. § 1961(1)(B). While the Complaint uses the word fraud, it does not plausibly allege any facts regarding any of these nine types of indictable acts.

Viewing the allegations of the Complaint in the light most favorable to Plaintiff, we find that it does not plausibly allege that Defendants engaged in any racketeering activity as that term is defined by 18 U.S.C. § 1961. We conclude, accordingly, that the factual allegations of the Complaint related to Defendants' actions in conspiring to commit fraud and steal Plaintiff's car from her driveway do not plausibly allege "that the defendant[s] participated, either directly or indirectly, in the conduct or the affairs of [an enterprise affecting interstate commerce] . . . through a pattern of racketeering activity that included at least two racketeering acts." DiGiglio, 293 F. Supp. 3d at 527 (quotation and citation omitted). Accordingly, we further conclude that the Complaint does not allege a civil claim for violation of the RICO Act upon which relief can be granted and we grant the Motion to Dismiss as to this claim.

## IV. MOTION FOR LEAVE TO AMEND

Plaintiff refers to her response to the Motion to Dismiss, in part, as a "Motion [for] Leave to Amend Civil Action." (Docket No. 8.) Nonetheless, she does not request leave to amend the Complaint anywhere in the response. However, since Plaintiff is proceeding pro se, we will treat her filing as including a request to file an amended complaint. See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 244).

Decisions on motions for leave to amend are "committed to the sound discretion of the district judge." Gay v. Petsock, 917 F.2d 768, 772 (3d Cir. 1990) (citations omitted). Nevertheless, the court must freely give leave to amend "[i]n the absence of any apparent or declared reason—such as . . . futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether an amendment would be futile, the court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id. (citing Burlington, 114 F.3d at 1434) (add'l citation omitted). Thus, "the district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) (citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)).

It is not apparent at this point in the litigation that Plaintiff is incapable of alleging plausible claims for relief against Defendants. Accordingly, we grant her leave to file an amended complaint. Plaintiff's amended complaint must comply with the Federal Rules of Civil Procedure. See Vogt, 8 F.4th at 185 (instructing that pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'" (quoting Mala, 704 F.3d at 245)); see also Mulvihill v. United States Post Off., Civ. A. No. 03-2348, 2004 WL 73976, at *1 (E.D. Pa. Jan. 14, 2004) (stating that "even *pro se* plaintiffs must comply with the Rules of Civil Procedure"). Plaintiff's amended complaint must be a complete document and cannot rely on or reference the original Complaint. See Garrett v. Wexford Health, 938 F.3d 69, 82 (3d Cir. 2019) ("[A]n amended pleading supersedes the original pleading and renders the original pleading a nullity." (citations omitted)). In addition, any amended complaint must

comply with Federal Rules of Civil Procedure 8 and 10. Pursuant to Rule 8, "[t]o state a claim for relief, a pleading must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought." Nelson v. Bank of Am., Nat'l Ass'n, Civ. A. No. 23-0255, 2023 WL 4844369, at *1 n.1 (E.D. Pa. July 3, 2023) (citing Fed. R. Civ. P. 8(a)). "Rule 8 does not require 'detailed factual allegations,' but a complaint must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Coniker v. Monfortoh, No. 23-1507, 2023 WL 7411531, at *1 (3d Cir. Nov. 9, 2023) (per curiam) (first quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008); then quoting Iqbal, 556 U.S. at 678). Plaintiff must also comply with Federal Rule of Civil Procedure 10, which requires that claims be listed in numbered paragraphs. See Fabian v. St. Mary's Med. Ctr., Civ. A. No. 16-4741, 2017 WL 3494219, at *3 (E.D. Pa. Aug. 11, 2017) (quoting Fed. R. Civ. P. 10(b)).

Plaintiff should not include legal argument in her amended complaint, as we only consider factual allegations in determining whether a complaint states a plausible claim for relief. See Talley, 116 F.4th at 206. In addition, Plaintiff should cite to the current version of any statute or law on which she relies. Furthermore, we have been unable to find most of the authority, both statutory and judicial, that Plaintiff relies on in her response to the Motion to Dismiss. We cannot base our decision on citations to legal authority that we cannot find. Plaintiff must make sure that the statutes on which she relies exist before including them in a court filing. Moreover, if Plaintiff cites to case law in the future, she must provide the Court with sufficient information to enable the Court to find the opinions she cites. If Plaintiff is unable to provide the Court with the types of the information provided in the case citations used

in this Memorandum,[4] she must, at a minimum, provide the Court with the name of the plaintiff and the defendant in the case, the name of the court that issued the decision, and the year the decision was issued. If Plaintiff relies on an opinion that does not appear in a reporter or on Westlaw or Lexis, she must provide the Court with a copy of the opinion. We will check all of Plaintiff's citations and will disregard any of Plaintiff's argument that relies on authority that we cannot find. We strongly suggest that Plaintiff carefully check any citations to authority before including those citations in court filings. Plaintiff is subject to Federal Rule of Civil Procedure 11, which provides as follows:

> (b) By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The Court may impose sanctions on a party that violates this Rule. See Fed. R. Civ. P. 11(c).

---

[4] Citations to case law in legal filings ordinarily include the names of the plaintiff and defendant, the volume number of the reporter in which the case is found, an abbreviation of the name of the reporter (such as F.4th or F. Supp. 3d), the number of the page on which the beginning of the opinion is printed, the page number where the words on which plaintiff relies appear, the name of the court that issued the opinion, and the year that the opinion was issued. If the case law on which a party relies appears only on Westlaw or Lexis, the identifying numbers provided by Westlaw or Lexis are used in place of a reporter.

## V. CONCLUSION

For the reasons stated above, we grant Defendants' Motion to Dismiss the Complaint, deny Plaintiff's request that we strike the Motion to Dismiss, and grant Plaintiff's request that we allow her to file an amended complaint. Plaintiff, therefore, may file an amended complaint that cures the deficiencies in her original Complaint and complies with the Federal Rules of Civil Procedure.[5] An Order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.

---

[5] We suggest that Plaintiff review the information provided on this Court's web site regarding pro se/self representation in this Court and this Court's pro se guidelines:
https://www.paed.uscourts.gov/pro-se
https://www.paed.uscourts.gov/sites/paed/files/documents/ntcproseguide.pdf